Filed 10/25/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| AGRICULTURAL LABOR RELATIONS BOARD, | C081373 |
| Petitioner, | (Super. Ct. No. 34201580002100) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| GERAWAN FARMING, INC., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate. Stay issued. Petition granted. Timothy M. Frawley, Judge.

Paul M. Starkey and Todd M. Ratshin for Petitioner.

None for Respondent.

Irell & Manella and David A. Schwarz; Barsamian & Mood and Ronald H. Barsamian; Michael P. Mallery for Real Party in Interest.

1

Under the Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act (Lab. Code,[1] § 1140; the Act), the Agricultural Labor Relations Board (§ 1141 et seq.; the board) adjudicates administrative complaints of unfair labor practices committed by agricultural employers, labor organizations, and their agents.  (§§ 1153-1155.7, 1160-1160.3.)  The board's general counsel (general counsel) serves as the prosecutor in those administrative proceedings, with "final authority, on behalf of the board, with respect to the investigation of charges and issuance of complaints [for unfair labor practices], and with respect to the prosecution of such complaints before the board."  (§ 1149.)  In one area, however, the Act conveys a prosecutorial power with respect to unfair labor practices upon the board, rather than upon general counsel; namely, the power to seek injunctive relief in a superior court.  (§ 1160.4.)

For some period of time before March 2015, the board had delegated plenary authority to seek injunctive relief under section 1160.4 to general counsel.  In March 2015, the board decided to change that delegation by requiring general counsel to obtain case-specific approval from the board for every request for injunctive relief.

In May 2015, general counsel asked the board to approve a proceeding for injunctive relief against Gerawan Farming, Inc. (Gerawan).  The board gave its conditional approval to that proceeding.  When Gerawan asked the board to disclose the communications between the board and general counsel regarding the matter under the California Public Records Act,[2] the board refused, claiming privilege.  Gerawan brought a writ proceeding in Sacramento County Superior Court seeking to force the board to disclose the requested communications, and the court ordered disclosure.  The board brought the present writ proceeding in this court to challenge the superior court's ruling.

---

[1]    All further section references are to the Labor Code unless otherwise noted.

[2]    Government Code section 6251.

For the reasons set forth hereafter, we conclude the superior court erred in ordering disclosure of the communications between the board and general counsel relating to the decision to seek injunctive relief against Gerawan because those communications are protected by the attorney-client privilege. As we will explain, even if due process concerns with respect to the pending administrative proceeding against Gerawan are raised by the communications at issue, those concerns do not preclude the attorney-client privilege from attaching to those communications, and because the communications are privileged, they are exempt from disclosure under the Public Records Act. Accordingly, we will direct that a writ of mandate issue ordering the superior court to vacate its order requiring disclosure of those communications and enter a new order denying Gerawan's request for disclosure.

## FACTUAL AND PROCEDURAL BACKGROUND

Before we set forth the facts underlying this mandate proceeding, we first address a procedural matter, then provide some legal background that is necessary to a full understanding of the underlying facts.

### *Procedural Matter*

In response to the board's petition for a writ of mandate, this court issued an order to show cause. In response to the order to show cause, Gerawan filed a document labeled a "response" that was in the form of an unverified legal brief that contained only argument as to why this court should deny the board's petition. This was improper. "If the court issues an alternative writ or order to show cause, the respondent or any real party in interest, separately or jointly, may serve and file a return by demurrer, verified answer, or both." (Cal. Rules of Court, rule 8.487(b)(1); see also Code Civ. Proc., § 1089 [when the court issues an alternative writ, "the party on whom the writ . . . has been served may make a return by demurrer, verified answer or both"].)

Gerawan would do well to be more careful in the future. The submission of "a return with a verified answer or demurrer is not a technicality, but is an integral and

3

critical step in the procedure for determining the merit of a petition for extraordinary relief." (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1085.) One possible consequence of filing a return that contains neither a demurrer nor a verified answer is that the return will be stricken and not considered in determining the merits of the mandate petition. (See *Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1287.) Indeed, that is what the board has asked us to do here.

Fortunately for Gerawan, there is a less catastrophic consequence available to us that we deem more appropriate than striking Gerawan's entire argument in opposition to the board's writ petition. "In the absence of a true return, all well-pleaded and verified allegations of the writ petition are accepted as true." (*Bank of America, N.A. v. Superior Court*, *supra*, 212 Cal.App.4th at p. 1084; see also *Titmas v. Superior Court* (2001) 87 Cal.App.4th 738, 741; *Shaffer v. Superior Court* (1995) 33 Cal.App.4th 993, 996, fn. 2.) Applying this rule, Gerawan's "response" is treated as a return by demurrer, because a demurrer admits the facts pleaded in a writ petition. (See *Bay Area Rapid Transit Dist. v. Superior Court* (1995) 38 Cal.App.4th 141, 143.) This is appropriate since Gerawan, in its response to the order to show cause, did not attempt to refute or contravene any of the facts the board alleged in support of its petition, but instead only sought to argue why this court should deny the board's petition, i.e., why the trial court was correct in granting Gerawan's petition to require the board to disclose certain documents under the Public Records Act. Thus, Gerawan's "response" can be understood as essentially a memorandum of points and authorities in support of a demurrer to the board's writ petition to this court. In light of that, we take the facts set forth hereafter from the well-pleaded, verified allegations in the board's writ petition.[3]

---

[3] Because the board incorporated by reference in its petition before this court all documents filed with the superior court, some of the facts that follow are drawn from the pleadings in the superior court.

4

The Act "is designed to provide agricultural workers with protection of their collective bargaining rights comparable to that provided nonagricultural workers by the [National Labor Relations Act, 29 U.S.C. § 151 et seq. (the NLRA)]. To that end the [Act] was patterned after the NLRA, with changes necessary to meet special needs of California agriculture." (*Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 345.) As a result, "under traditional legal principles [we], of course, look to established administrative and judicial interpretations of the federal act as persuasive indicants of the appropriate interpretation of the state legislation." (*Highland Ranch v. Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 848, 855.)

Under the Act, the five-member board is empowered (among other things) to prevent agricultural employers, labor organizations, and their agents from engaging in unfair labor practices. (§§ 1141, subd. (a) [number of board members], 1153 et seq. [defining unfair labor practices], 1160 [empowering the board to prevent such practices].) Generally, the board's role is to adjudicate administrative complaints of unfair labor practices. (§§ 1160-1160.3.) Additionally, however, the Act conveys upon the board the power to seek injunctive relief in superior court. (§ 1160.4.) Specifically, the Act provides that "[t]he board may, upon finding reasonable cause to believe that any person has engaged in or is engaging in an unfair labor practice, petition the superior court in any county wherein the unfair labor practice in question is alleged to have occurred, or wherein the person resides or transacts business, for appropriate temporary relief or restraining order." (§ 1160.4, subd. (a).) This provision derives from a comparable provision in the NLRA (see 29 U.S.C. § 160(j) (NLRA § 10(j)); *Public Employment Relations Bd. v. Modesto City School Dist.* (1982) 136 Cal.App.3d 881, 895, fn. 6), the purpose of which is " 'to protect the integrity of the collective bargaining process and to preserve the [National Labor Relations Board's] remedial power while it processes' an

5

unfair labor practice complaint." (*Frankl ex rel. NLRB v. HTH Corp.* (9th Cir. 2011) 650 F.3d 1334, 1341 (*Frankl*), quoting *Miller v. California Pacific Medical Center* (9th Cir. 1994) 19 F.3d 449, 459-460.)

In addition to creating the board, the Act also established the position of the board's general counsel. (§ 1149.) General counsel "exercise[s] general supervision over all attorneys employed by the board (other than administrative law officers and legal assistants to board members), and over the officers and employees in the regional offices." (*Ibid.*) In addition, "final authority, on behalf of the board, with respect to the investigation of charges and issuance of complaints [for unfair labor practices], and with respect to the prosecution of such complaints before the board" rests with general counsel, rather than with the board itself. (*Ibid.*) "Where the [Act] is concerned, Labor Code section 1149 provides for a general counsel of the ALRB with final authority to investigate charges, issue complaints, and prosecute such complaints before the ALRB. (Lab. Code, § 1149.) The statute requires that the duties be performed 'in an objective and impartial manner without prejudice toward any party.' (*Ibid.*) The general counsel is not selected by the ALRB itself, but is appointed by the Governor. (Lab. Code, § 1149.) The general counsel acts autonomously, and is not an agent of the ALRB. [Citation.] Only the general counsel, not the ALRB itself, is authorized to issue unfair labor practice complaints." (*The Termo Co. v. Luther* (2008) 169 Cal.App.4th 394, 411-412.) Like the board's power to seek injunctive relief in superior court, this separation of the adjudicatory and prosecutorial functions with respect to unfair labor practice complaints within the board's purview derives from a comparable provision in the NLRA. (*Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd.*, *supra*, 24 Cal.3d at p. 345 ["The [Act] incorporates procedural safeguards of the NLRA including the separation of prosecutorial from adjudicatory functions"].)

The Act also provides that general counsel "shall have such other duties as the board may prescribe or as may be provided by law." (§ 1149.) As relevant here, one of

6

the duties the board has delegated to general counsel is the board's power to seek injunctive relief under section 1160.4.  Prior to March 2015, it appears the board had granted general counsel plenary authority to seek injunctive relief under section 1160.4 pursuant to the terms of a written agreement between the board and general counsel dating from July 2010.  For reasons not germane to the present dispute, however, in March 2015 the board decided to require general counsel to obtain case-specific approval from the board for every request for injunctive relief.  To that end, the board adopted an "internal management Memorandum" revising the terms of its delegation to general counsel as follows:

"The General Counsel may initiate and prosecute injunction proceedings as provided in Section 1160.4 only upon approval of the Board.  In accordance with this requirement, the General Counsel shall provide copies of the proposed complaint for such relief and the papers in support thereof at least 24 hours prior to filing the application and shall further provide copies of any and all papers filed in the case by any person, and any orders of the court within 24 hours of their receipt.  The requirement of Board approval shall extend to the pursuance of any appeals or defenses to appeals that may follow the initial filing in the superior court and Board approval must be sought at least 24 hours before the date of filing.  All complaints, appeals, or defenses to such appeals shall include the representation that Board approval has been obtained.  The General Counsel shall report to the Board on the outcome of all court proceedings.  The Board shall act upon such requests for injunctive relief and all other related requests within 24 hours of their receipt.  The obligations under this paragraph shall not include the provision to the Board of any facts or other information which would constitute prohibited

communications under sections 20700 and 20740 of the Board's regulations. (Title 8, Cal. Code Regs., sec 20700, 20740.)"[4]

It is this delegation that led to the events giving rise to the underlying dispute in this case, as we now explain.

*Underlying Facts*

On April 27, 2015, Rafael Marquez Amaro filed a charge with the board's Visalia regional office (case No. 2015-CE-011-VIS) alleging that on or about April 24 he had received a "written warning/suspension for whistling in retaliation for his union activity and participation in an ALRB proceeding" from his employer, Gerawan. The regional office began investigating the charge immediately. Three days later, on April 30, United Farm Workers of America (the union) filed its own charge (case No. 2015-CE-012-VIS) based on Marquez's suspension and the subsequent termination of his employment by Gerawan.

On May 6, the regional office asked Gerawan to identify the individual or individuals who decided to suspend and terminate Marquez. On May 8, Gerawan responded to the regional office. Noting the existence of the board's March 2015 memorandum regarding the delegation of authority to seek injunctive relief under section 1160.4, Gerawan asked that if general counsel decided to seek injunctive relief against Gerawan in the Marquez matter, the regional office (among other things) provide to Gerawan any papers submitted to the board in support of the request for permission to seek injunctive relief. The regional director responded that same day, informing

---

**4**    As relevant here, section 20700 of title 8 of the California Code of Regulations prohibits communications with employees of the board "about the disposition of [an] action while the action is pending before the Board" and communications "which may be expected to affect the interest of a party in a case." Section 20740, subdivisions (a) and (b) of title 8 of the California Code of Regulations identifies communications that are not prohibited by section 20700, including communications of the type described in section 20700 to which all parties in the action are privy.

8

Gerawan that he did "not intend to give [Gerawan] notice of what we file with the Board unless the regulations require us to."

On the morning of May 12, Samantha Cooper, an assistant to the board's chairman, received a telephone call from a member of the team from the regional office investigating the Marquez matter, who told her the board would be receiving a "TRO packet" that day for the board's review and decision and the declaration in the packet contained "inaccuracies" and "statements . . . that were untrue." Cooper immediately reported the phone call to the board's executive secretary, J. Antonio Barbosa, who directed her to type up a statement of the conversation, while keeping the identity of the caller confidential. That afternoon, Barbosa circulated Cooper's statement to representatives from the regional office and Gerawan pursuant to the board regulations governing prohibited communications (Cal. Code Regs., tit. 8, § 20700 et seq.). Gerawan immediately requested that the board provide Gerawan with "any documents submitted to the Board by the General Counsel in support of its request to commence an enforcement action against Gerawan."

As the caller had predicted, on May 12 the board received a request from general counsel for authorization to file a petition for a temporary restraining order (TRO) in the Fresno County Superior Court in the Marquez matter. The board ruled on that request later the same day by means of a letter to general counsel that conditionally authorized commencement of a TRO proceeding. The board did not make the authorization letter public but referred to it in an administrative order dated two days later, May 14.

The day after the board issued the administrative order, Gerawan requested a copy of the authorization letter and any related documents pursuant to the California Public Records Act and also renewed its request for "any documents submitted to the Board by the General Counsel in support of her request for Board approval to file a petition for a TRO." On May 26, the board responded that the requested documents would not be provided because they were exempt from disclosure on grounds of privilege.

9

A week later, on June 1, general counsel commenced the TRO proceeding in Fresno. The next day, June 2, Gerawan filed a petition for a writ of mandate and complaint for declaratory and injunctive relief against the board in the Sacramento County Superior Court seeking to require the board to disclose the documents Gerawan had requested under the California Public Records Act. (See Gov. Code, § 6259.)

On June 10, the court in Fresno denied the request for injunctive relief and the regional director voluntarily dismissed the case in July 2015. Meanwhile, the mandate proceeding went forward in Sacramento and was set for hearing in January 2016.[5] (Pet. at 13, ¶ 15) In opposition to the petition, the board argued the documents were "privileged against disclosure because [they] are deliberative in nature, arise in the context of litigation, concern litigation drafts and attorney work product, and/or concern confidential communications between the Board and the General Counsel."

On January 8, 2016, the superior court issued its ruling granting Gerawan's petition in part and denying it in part. Addressing the TRO packet and the board's authorization letter, the court first concluded that "[t]he documents are not attorney-client communications or attorney-work product because the General Counsel was not acting as the Board's attorney." The court took the view that once Marquez and the union filed their charges against Gerawan, general counsel assumed the role of prosecutor in the unfair labor practice case pending before the board, and general counsel could not, consistent with constitutional due process principles, concurrently give legal advice to the board in the same case. Because "recognizing an attorney-client relationship between the

---

[5] The administrative charges against Gerawan have likewise proceeded, with the regional director issuing a consolidated complaint in both cases at the end of June 2015. (Apx 228-234) Gerawan sought disclosure of the requested documents in that proceeding also, but the administrative law judge revoked Gerawan's subpoenas for the documents and the board denied Gerawan's interim appeal from that ruling. In February 2016, Gerawan sought review of the board's ruling in the superior court in Fresno by means of a petition for writ of mandate. That proceeding apparently remains pending.

Board and the General Counsel would raise serious due process concerns in the administrative case," the court decided that general counsel could not be acting as the board's attorney with respect to the decision whether to seek injunctive relief under section 1160.4. Thus, instead of being "confidential or privileged communications," general counsel's communications to the board regarding injunctive relief "were in the nature of an *ex parte* request to the agency decisionmaker." And "the Board's response to the General Counsel was not a confidential communication to counsel, but rather a public ruling on the General Counsel's request."

The court also rejected the board's argument that disclosure of the TRO packet and the authorization letter "would invade the Board's deliberative process privilege." With respect to the TRO packet, the court found that the board "failed to explain how disclosing [documents] submitted to the Board by General Counsel -- a party advocate -- would impair the Board's deliberative process or undermine the Board's ability to perform its functions" and "failed to show that the public interest in nondisclosure of the TRO packet clearly outweighs the public interest in disclosure." With respect to the authorization letter, the court found it was "not a 'predecisional' communication that is part of the 'deliberative process.' It is the result of the deliberative process: the Board's decision."[6]

On February 8, 2016, the superior court filed its order and judgment granting Gerawan's requests to compel the board to make available to Gerawan (1) "all documents submitted by the General Counsel in support of the General Counsel's request for

---

[6]     The court did conclude that "documents relating to the 'whistleblower claim' " were except from disclosure and denied Gerawan's petition to the extent it encompassed those documents. The propriety of this aspect of the court's ruling is not before us in this proceeding, as the board's writ petition here challenges only the court's ruling pertaining to the TRO packet and the authorization letter, and Gerawan did not seek relief from the denial of disclosure of the "whistleblower" documents.

11

authorization to file a petition for a TRO, namely the 'TRO Packet' " and (2) "the Board's communications to the General Counsel authorizing the filing of the petition for a TRO, including the Board's May 12, 2015 letter to the General Counsel granting conditional authorization." The court stayed enforcement of its order for 10 days to allow the board to seek a stay from this court, which the board eventually did on February 24, when it commenced the present proceeding by filing its petition for writ of mandate and request for immediate stay. (See Gov. Code, § 6259, subd. (c) [providing for appellate review of an order requiring disclosure of documents under the California Public Records Act by writ petition].)

On February 26, this court issued a stay of the superior court's February 8 order and judgment and thereafter, on March 24, directed that an order to show cause issue.

DISCUSSION

"At the heart of the [Public Records Act] is the declaration that 'every person has a right to inspect any public record, except as hereafter provided.' ([Gov. Code,] § 6253, subd. (a).) In other words, all public records are subject to disclosure unless the Legislature has expressly provided to the contrary." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 346.) Here, there is no dispute that the TRO packet and the authorization letter[7] qualify as public records. The question is whether those documents fall within any of the exemptions to disclosure contained in the Public Records Act.

Among the documents the Public Records Act exempts from disclosure are "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state

---

[7] By these terms, we intend to encompass all of the documents the superior court ordered the board to disclose to Gerawan: namely, "all documents submitted by the General Counsel in support of the General Counsel's request for authorization to file a petition for a TRO" and "the Board's communications to the General Counsel authorizing the filing of the petition for a TRO, including the Board's May 12, 2015 letter to the General Counsel granting conditional authorization."

12

law, including, but not limited to, provisions of the Evidence Code relating to privilege." (Gov. Code, § 6254, subd. (k).) "By its reference to the privileges contained in the Evidence Code, . . . the Public Records Act has made the attorney-client privilege applicable to public records." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 370.)

"The attorney-client privilege applies to communications in the course of professional employment that are intended to be confidential. [Citations.] Under the Evidence Code, a client holds a privilege to prevent the disclosure of confidential communications between client and lawyer. (Evid. Code, § 954.)" (*Roberts v. City of Palmdale*, *supra*, 5 Cal.4th at p. 371.) " '[C]onfidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (Evid. Code, § 952.)

The dispute in this case focuses on the nature of the relationship between the board and general counsel with respect to the decision whether to seek injunctive relief under section 1160.4. In other words, when general counsel communicates with the board requesting authority to file for injunctive relief in a given matter and when the board communicates to general counsel in response to such a request, do the two parties have the relationship of lawyer and client to each other, or do they have some other sort of relationship? In the answer to that question lies the resolution of this case.

For purposes of the attorney-client privilege, a lawyer is "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation" (Evid. Code, § 950) and a client is "a person who, directly or through an authorized

13

representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity" (*id.*, § 951).

According to the board, "[t]he trial court completely misconstrued the nature of the Board's statutory authority to seek injunctive relief, and its relationship with its General Counsel when exercising such authority." In the board's view, "[t]he trial court wrongly concluded that such determinations by the Board whether to seek injunctive relief are adjudicative proceedings" when "[t]hey clearly are not." Furthermore, the board claims, "[i]n such matters, the General Counsel acts on behalf of the Board, and the relationship between the Board and General Counsel is one of attorney-client." For the reasons that follow, we agree.

There are no California decisions addressing the nature of the relationship between the board and its general counsel with respect to decisions to seek injunctive relief under section 1160.4, but there are federal decisions addressing the nature of the relationship between the National Labor Relations Board (NLRB) and its general counsel with respect to decisions to seek injunctive relief under section 10(j) of the NLRA, and those decisions support the board's argument that the relationship here is one of attorney and client. One of those federal decisions is *Frankl*, in which the Ninth Circuit Court of Appeals addressed whether the district court had the power to issue an injunction under section 10(j) of the NLRA where the NLRB had not individually approved the filing of the proceeding. (*Frankl*, *supra*, 650 F.3d at p. 1340.) *Frankl* arose at a time when the NLRB had delegated its authority to seek injunctive relief to its general counsel without reserving any right to approve such a filing beforehand.[8] (*Id.* at p. 1340.) On appeal

_____

[8]     The Ninth Circuit explained the pertinent background in *Frankl* as follows:

"From 1935, when the NLRA was enacted, to 1947, the Board [was] responsible for both the prosecution and the adjudication of all cases over which the Board had jurisdiction. [Citations.] In response to criticism that the Board's exercise of both

14

from the district court's grant of an injunction under section 10(j), the appellants argued

that the NLRA itself "require[d] that petitions for § 10(j) relief be individually approved

by the [NLRB] before they are filed with a district court," and "[b]ecause the Regional

Director did not obtain such approval, . . . he did not have authority to petition for the

injunction, and the District Court was without the power to grant it." (*Frankl*, at

p. 1340.) In rejecting that argument, and concluding that "§ 10(j) does not direct the

[NLRB] to decide itself, on an individualized basis, whether to file petitions for interim

relief with district courts," the court observed as follows: "No more than it requires the

---

prosecutorial and adjudicatory functions was improper, Congress established the position of General Counsel of the Board and assigned the General Counsel the Board's prosecutorial functions, as well as other roles. . . .

"[¶] . . . [¶]

"[I]mmediately after the Taft-Hartley Act's passage, . . . the General Counsel and the [NLRB] entered into a 'memorandum of understanding' according to which the 'General Counsel [was to] exercise full and final authority and responsibility on behalf of the [NLRB] for *initiating* and prosecuting injunction proceedings as provided for in Section[] 10(j).' [Citations.]

"In 1950, however, the [NLRB] published a memorandum in the Federal Register 'describ[ing] the statutory authority and set[ting] forth the prescribed duties and authority of the General Counsel of the [NLRB].' [Citation.] That memorandum provided that '[o]n behalf of the [NLRB], the General Counsel of the [NLRB] will[,] in full accordance with the directions of the [NLRB], . . . initiate and prosecute injunction proceedings as provided in section 10(j) . . . *Provided, however*, That the General Counsel will initiate and conduct injunction proceedings under section 10(j) . . . only upon approval of the [NLRB] . . . .' [Citation.] In other words, the 1950 Memorandum authorized the General Counsel to file § 10(j) petitions on the [NLRB]'s behalf, but required him to seek case-specific authorization from the [NLRB] before filing them. The [NLRB] issued a new memorandum in 1955 containing an assignment of litigation authority to the General Counsel identical to that in the 1950 Memorandum. [Citations.] These two memoranda set forth what was the [NLRB]'s standard, but not invariant, practice until . . . 2007," when the NLRB once again delegated unfettered authority to its general counsel to seek injunctive relief under section 10(j) of the NLRA. (*Frankl*, *supra*, 650 F.3d at pp. 1343-1344, fns. omitted.)

15

[NLRB]'s involvement in each decision relating to a § 10(j) petition does the language of the statute require that the [NLRB] approve each individual petition.  In other words, nothing in the statute makes the individual petition the unit of analysis for determining when the [NLRB] is exercising its § 10(j) power.  Moreover, *petitioning a court for relief is a lawyerly function and the General Counsel is, after all, the supervisor of the [NLRB]'s legal staff.*  [Citation.]  So it seems quite natural that the [NLRB] could assign to the General Counsel the duty to decide when to exercise its power to petition.  (*Frankl*, at pp. 1348, 1350, italics added.)  The court then cited an ethics rule promulgated by the American Bar Association recognizing that a " 'client may authorize the lawyer to take specific action on the client's behalf without further consultation.' " (*Id.* at p. 1350.)

At least implicitly, if not explicitly, the court in *Frankl* recognized that with respect to requests for injunctive relief, the NLRB's general counsel acts as the NLRB's lawyer -- performing the "lawyerly function" of "petitioning a court for relief" -- and by delegating its authority to seek injunctive relief to its general counsel, the NLRB did nothing more than authorize its lawyer to take action on the NLRB's behalf without seeking specific approval from the NLRB in each case.  Thus, the court recognized the existence of an attorney-client relationship between the NLRB and its general counsel in this context.

What the Ninth Circuit at least implicitly recognized in *Frankl*, the NLRB itself explicitly declared in *Holland Rantos Co.* (1978) 234 NLRB 726.  There, the NLRB rejected an employer's claim that the NLRB's general counsel had engaged in improper ex parte communications with the NLRB in connection with seeking an injunction under section 10(j), observing that "[t]he relationship between the General Counsel and the [NLRB] in 10(j) proceedings is analogous to the attorney-client relationship with its attendant privilege of confidentiality." (*Holland Rantos Co.*, at p. 726.)  Relying on that decision, the district court in *United States ex rel. NLRB v. Electro-Voice* (N.D. Ind. 1995) 879 F.Supp. 919, 924 concluded that "all communications regarding § 10(j)

16

matters between the General Counsel and the [NLRB] are attorney-client communications, [citation], and therefore, are entitled to protection. Discovery as to such communications will not be allowed."

Gerawan contends: (1) these federal decisions are not binding on this court; (2) *Frankl* did not "hold" that the NLRB and its general counsel were in an attorney-client relationship; and (3) the NLRB's decision in *Holland Rantos Co.* is not "persuasive, given its conclusory dismissal of due process concerns." These contentions are unavailing.

As to Gerawan's first point, the fact that the federal decisions are not *binding* on us does not mean they are not *persuasive* to us. As to its second point, the fact that *Frankl* did not *hold* that an attorney-client relationship existed between the NLRB and its general counsel does not mean the court's analysis of the point is any less convincing. The Ninth Circuit recognized in *Frankl* that in addition to wielding the prosecutorial functions of the NLRB, the NLRB's general counsel serves as the supervisor of the NLRB's legal staff and thus functions, in that respect, as the NLRB's lawyer. The Ninth Circuit further recognized that the task of petitioning a court for relief is a "lawyerly function" -- that is, it is a function that *must* be performed by a lawyer. Whether the NLRB delegated its authority to seek injunctive relief under section 10(j) to its general counsel, the NLRB could exercise that authority only by employment of an attorney. (See *Frankl*, *supra*, 650 F.3d at p. 1347 ["§ 10(j) gives the Board the power to petition a court for relief, which the Board necessarily does through counsel"].) In light of this fact, the delegation of the power to seek injunctive relief to general counsel -- who already serves as the NLRB's lawyer by supervising the NLRB's legal staff -- appears to be nothing other than a client's authorization to its attorney to take action on the client's behalf. That was the essence of the court's analysis in *Frankl*, and we find that analysis persuasive under the comparable provisions of the Act at issue here, notwithstanding the

17

fact that we are not *bound* by *Frankl*, and notwithstanding the fact that this analysis may not have represented the *holding* of *Frankl*.

To the extent Gerawan argues that the terms of the delegation itself do "not contemplate the production of privilege, confidential evidence or confidential communications between the Board and General Counsel," we disagree. In Gerawan's view, because the delegation memorandum instructs general counsel to provide the board with "copies of the proposed complaint for [injunctive] relief and the papers in support thereof," "[t]he papers to be submitted to the Board are not confidential; they are copies of proposed public court filings." (Italics and bold text omitted.) But as Gerawan itself acknowledges, at the time the documents are transmitted from general counsel to the board, they are not "public court filings" but *proposed* public court filings. Gerawan offers no explanation of why documents general counsel *proposes* to file cannot be protected by the attorney-client privilege when those documents are transmitted by the attorney to the client for approval.

That takes us to Gerawan's third point, which is really the heart of Gerawan's argument and the heart of the superior court's decision. In essence, Gerawan argues, and the superior court concluded, that there *cannot* be an attorney-client relationship between the board and general counsel with respect to decisions to seek injunctive relief under section 1140.6 because recognition of such a relationship would, as the superior court put it, "raise serious due process concerns in the administrative case." As we will explain, however, even if recognizing an attorney-client relationship between the board and general counsel with respect to decisions to seek injunctive relief under section 1140.6 would raise due process concerns, those concerns are not a legitimate basis for *disregarding* that relationship and, as a consequence, ignoring the privileges that arise from it. In other words, either an attorney-client relationship exists or it does not. If the relationship exists, *and* its existence raises due process concerns in the administrative case against Gerawan, then those concerns can be addressed *in that case*. But those

18

concerns cannot justify the conclusion that the relationship does not exist in the first place, nor do they justify *acting* as though the relationship does not exist. Simply put, if the existence of an attorney-client relationship between the board and general counsel with respect to the decision to seek injunctive relief against Gerawan creates due process concerns in the administrative case against Gerawan that is pending before the board, those concerns are *not* to be dealt with by pretending there was no such relationship and by requiring the board to disclose confidential communications to and from general counsel made in the course of that relationship.

Our Supreme Court most recently explored the application of due process principles to the roles played by attorneys employed by administrative agencies in administrative proceedings in *Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731. There, the court explained as follows:

"When . . . an administrative agency conducts adjudicative proceedings, the constitutional guarantee of due process of law requires a fair tribunal. [Citation.] A fair tribunal is one in which the judge or other decision maker is free of bias for or against a party. [Citations.] Violation of this due process guarantee can be demonstrated not only by proof of actual bias, but also by showing a situation 'in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.' [Citation.]

"Unless they have a financial interest in the outcome [citation], adjudicators are presumed to be impartial [citation]. . . .

"By itself, the combination of investigative, prosecutorial, and adjudicatory functions within a single administrative agency does not create an unacceptable risk of bias and thus does not violate the due process rights of individuals who are subjected to agency prosecutions. [Citations.] Thus, '[p]rocedural fairness does not mandate the dissolution of unitary agencies, but it does require some internal separation between advocates and decision makers to preserve neutrality.' [Citation.]

19

"[T]he state Administrative Procedure Act (Gov. Code, § 11400 et seq.) was revised in 1995 in accordance with recommendations of the California Law Revision Commission, after the commission had studied the matter for seven years. [Citation.] To ensure the impartiality of administrative adjudicators, the act generally prohibits ex parte communications (Gov. Code, § 11430.10) and requires 'internal separation of functions' [citations].

"Significantly, however, the state Administrative Procedure Act requires the internal separation of prosecutorial and advisory functions on a case-by-case basis only. [Citation.] The act does not prohibit an agency employee who acts in a prosecutorial capacity in one case from concurrently acting in an advisory role in an unrelated case. We have summarized the act's relevant restrictions this way: 'The agency head is free to speak with anyone in the agency and to solicit and receive advice from whomever he or she pleases—anyone except the personnel who served as adversaries *in a specific case*. [Citations.] Indeed, the agency head can even contact the prosecutor to discuss settlement or direct dismissal. [Citations.] Virtually the only contact that is forbidden is communication in the other direction: a prosecutor cannot communicate off the record with the agency decision maker or the decision maker's advisers *about the substance of the case*.' " (*Morongo Band of Mission Indians v. State Water Resources Control Bd.*, *supra*, 45 Cal.4th at pp. 737-738.)

From *Morongo* and other decisions, the superior court here drew the conclusions that "[d]ue process requires the internal separation of prosecutorial and advisory functions" and "[i]t is a violation of the constitutional right to due process of law for an agency attorney acting as prosecutor to concurrently advise the administrative decision maker in the same proceeding." Without deciding whether these conclusions are correct as stated, we agree with the superior court that it may "raise . . . due process concerns in the administrative case" against Gerawan for general counsel to act both as the prosecutor before the board in that administrative case *and* as the attorney for the board with respect

20

to the injunctive proceeding against Gerawan under section 1140.6. But such concerns *cannot* justify disregarding the attorney-client relationship and the privilege that attaches to communications in the course of that relationship.

Notably, early federal case law under the NLRA recognized the potential for due process problems arising from the very grant of authority to the NLRB to seek injunctive relief in the first place. *Evans v. International Typographical Union* (S.D. Ind. 1948) 76 F.Supp. 881 -- a case that arose very soon after the NLRB first delegated its authority to seek injunctive relief under section 10(j) of the NLRA to the NLRB's general counsel -- contains this pertinent discussion on the subject:

"[I]t is contended by respondents that if the [NLRB]'s power to petition for interlocutory equitable relief under the provisions of Section 10(j) is delegable, there is no limit to the authority to confer its functions upon the General Counsel and that such delegation could extend even to the distinctly judicial powers of the [NLRB]. The statute itself, as well as its legislative background, indicates that it was the purpose and policy of Congress to separate the judicial functions of the [NLRB] from any prosecutive or investigative functions. Thus, it is not reasonable that the [NLRB] could properly delegate its functions of a judicial nature, because such a delegation would pervert the Congressional design for the separation of powers within the agency. On the other hand, the delegation of its functions which are of a more prosecutive than judicial nature is in harmony with this design.

"The consistency of such a delegation with the Congressional intent to sever the judicial functions of the agency from its prosecutive activities is emphasized when the authority to initiate interlocutory proceedings for temporary relief under Section 10(j) is more carefully considered. If the [NLRB] itself were to petition the court for such temporary relief, not only would it be performing a function of a prosecutive nature, but also it would have considered, ex parte, facts which relate to the very issues upon which the [NLRB] must ultimately pass in its quasi-judicial capacity. It is reasonable to assume

21

that such prosecutive action and prejudgment on the part of the [NLRB] might tend to cast the shadow of partiality upon the further and principal proceedings before the [NLRB]." (*Evans v. International Typographical Union*, *supra*, 76 F.Supp. at p. 889.)

Essentially, the court in *Evans* recognized that Congress's very grant of power to the NLRB to seek injunctive relief in the first place raised the specter of due process concerns, inasmuch as the NLRB -- if it had ever exercised that power -- would have been acting as prosecutor in seeking injunctive relief and as adjudicator in ultimately ruling on the administrative charges. The NLRB avoided this problem by immediately delegating to its general counsel the full and final authority to seek injunctive relief. Nevertheless, it is not difficult to understand how those due process concerns can arise again when the administrative agency -- be it the NLRB or the board -- conditions its delegation of authority by requiring its general counsel to seek approval from the agency on a case-by-case basis before pursuing injunctive relief. This is so because by making itself part of the prosecutorial process again (by reserving to itself the final decision as to whether to seek injunctive relief), the administrative agency raises legitimate questions about its ability to later serve as a neutral and detached adjudicator with respect to the related administrative charges.

Thus, the due process concerns that drove the superior court's decision here are not imaginary. But the superior court's decision to find that there was no attorney-client relationship between the board and general counsel with respect to the decision to seek injunctive relief against Gerawan under section 1140.6 because recognition of that relationship would give rise to such due process concerns finds no support in the law. Thus, while the superior court may have correctly identified the problem, the court imposed a solution to that problem that has no lawful basis.

Gerawan's ultimate concern here is that it will be deprived of a fair trial in the administrative proceeding because of the communications that occurred between the board and general counsel with respect to the decision to seek injunctive relief against

Gerawan in superior court under section 1140.6. But Gerawan offers no authority for the idea that the *possibility* Gerawan may not get a fair trial in the administrative proceeding justifies disregarding the attorney-client relationship between the board and general counsel, and we are aware of none.[9]

To the extent Gerawan argues that California law requires disclosure of the communications at issue here because they qualify as prohibited ex parte communications that must be disclosed under the provisions of the California Administrative Procedures Act[10] and the board's own rules, we are not persuaded. Assuming (without deciding) that the communications between the board and general counsel with respect to the decision to seek injunctive relief against Gerawan in the superior court under section 1140.6 fall within the ban on ex parte communications contained in Government Code section 11430.10,[11] the proper resolution in such a case is

---

[9] To illustrate the point that any prejudicial unfairness to Gerawan is, at this point, merely *a possibility*, it is significant to point out that: (1) the ultimate decision in the administrative proceeding may go in favor of Gerawan, in which case there will be no prejudice at all; and (2) under the board's rules, the decision in an unfair labor practice proceeding before the board is made by an administrative law judge, the board reviews the decision only if a party files an exception to it, and even then the board's role is simply to "review the applicable law and the evidence and determine whether the factual findings are supported by a preponderance of the evidence taken." (Cal. Code Regs., tit. 8, §§ 20279, 20282, 20286, subd. (b).) Thus, the possibility that a communication made to the board at the outset of the proceeding, even before the administrative complaint was filed by general counsel, for the sole purpose of determining whether injunctive relief should be sought in superior court, will ultimately influence an adjudicatory decision by the board in the administrative proceeding that will prejudice Gerawan is highly attenuated.

[10] Government Code section 11340 et seq.

[11] Subject to certain exceptions, Government Code section 11430.10 forbids any ex parte "communication, direct or indirect, regarding any issue in [an administrative] proceeding" between a party to that proceeding (here, general counsel) and the presiding officer in that proceeding. Government Code section 11430.70 makes that ban applicable

23

for the communication to be made part of the record in the administrative proceeding. (Gov. Code, § 11430.50.) The same is true under the board's rules. (See Cal. Code Regs., tit. 8, § 20750.) Gerawan offers no authority for the idea that a party excluded from such a communication is entitled to seek disclosure in a collateral proceeding under the Public Records Act. Thus, Gerawan's remedy -- if any -- lies in the administrative proceeding, not here.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to: (1) vacate its judgment partially granting and partially denying Gerawan's petition for writ of mandate; and (2) enter a new judgment denying Gerawan's petition in its entirety. The board shall recover its costs in this proceeding. (Cal. Rules of Court, rule 8.493.) The previously issued stay shall remain in effect until this decision is final.


/s/_____
Robie, J.

We concur:



/s/_____
Nicholson, Acting P.J.



/s/_____
Hoch, J.

---

to communications with "the agency head," and Government Code section 11405.40 defines "agency head" as "a person or body in which the ultimate legal authority of an agency is vested" (here, the board).