Filed 5/14/26

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE,<br><br>       Petitioner,<br><br>       v.<br><br>SANTA CLARA COUNTY<br>SUPERIOR COURT,<br><br>       Respondent;<br><br>JOSEPH FEGHHI,<br><br>       Real Party in Interest. | H053051<br>(Santa Clara County<br> Super. Ct. No. F2200028) |


This original proceeding arises out of a prosecution for murder following a fatal drunk driving incident. The question presented is whether an officer's failure in a search warrant application to inform the magistrate of the defendant's request for a breath test undermines the validity of the warrant authorizing seizure of a blood sample to test the defendant's blood alcohol level. We conclude it does not.

Real party in interest Joseph Feghhi was arrested after his vehicle, traveling nearly 130 miles per hour on Highway 101 in Gilroy, rear-ended a vehicle driven by Vanessa Arellano, killing her. Officers obtained a warrant to draw a blood sample from Feghhi after he initially refused—though later consented—to submit to a chemical test. The blood sample, taken more than

three hours after the accident, revealed a blood alcohol concentration (BAC) of 0.14 percent.

Feghhi was charged by information with murder, gross vehicular manslaughter, and driving with a BAC over 0.08 percent and causing injury.

Feghhi moved to quash and traverse the search warrant authorizing the seizure of his blood sample and to suppress the resulting evidence. He asserted the warrant affiant misrepresented and/or omitted the circumstances of Feghhi's purported refusal to submit to a chemical test, when, in fact, the transcript of the officer's body-worn camera recording shows Feghhi was willing to submit to a breath test. The district attorney (hereafter, petitioner) opposed Feghhi's motion, arguing that he had not met his burden to justify a *Franks*[1] hearing because, even assuming the magistrate was informed of Feghhi's willingness to take a breath test, the warrant was supported by probable cause.

The respondent superior court (trial court) granted the motion to quash and traverse after concluding the magistrate would not have issued the warrant if the affidavit had disclosed Feghhi's consent to a breath test.

Petitioner filed a petition for a writ of mandate seeking reversal of the trial court's order traversing the search warrant and suppressing the evidence of Feghhi's BAC (petition). For the reasons explained herein, we conclude that, even assuming deliberate omission of the defendant's consent to a breath test from the warrant affidavit, Feghhi has not demonstrated that correcting the alleged omission would have changed the probable cause analysis or rendered issuance of the warrant unreasonable under the Fourth Amendment. We therefore direct that a peremptory writ of mandate issue ordering the court to vacate its order granting the motion to traverse and

---

[1] *Franks v. Delaware* (1978) 438 U.S. 154 (*Franks*).

quash search warrant and suppress evidence, and enter a new order denying the motion.

## I. FACTS AND PROCEDURAL BACKGROUND

*A. Unverified Response to Order To Show Cause*

Before setting forth the facts and procedural background, we address a preliminary issue related to the return on the order to show to cause.

As explained further in the procedural history *post* (pt. I.C.), after transfer from the California Supreme Court, this court issued an order to show cause and invited real party in interest to file a return in opposition to the writ. Feghhi did so. However, the return in opposition to the writ (return) filed by Feghhi is neither a verified answer nor return by demurrer, as required by the applicable court rule. (Cal. Rules of Court, rule 8.487(b)(1); see also Code Civ. Proc., § 1089.) The return does not attempt to respond to the formal allegations of the petition and primarily asserts legal arguments on the reasonableness of procuring a warrant for a blood draw when the defendant has consented to a noninvasive breath test.

Rule 8.487(b)(1) of the California Rules of Court provides, "If the court issues an alternative writ or order to show cause, the respondent or any real party in interest, separately or jointly, may serve and file a return by demurrer, verified answer, or both." Courts deem this requirement more than a technicality; it is "an integral and critical step in the procedure for determining the merit of a petition for extraordinary relief." (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1085 (*Bank of America*).) The filing of a return "in the form of an unverified legal brief" is therefore "improper." (*Agricultural Labor Relations Bd. v. Superior Court* (2016) 4 Cal.App.5th 675, 681 (*Agricultural*).)

3

The appropriate remedy for failure to file a verified answer or demurrer is to treat the unverified return "as a return by demurrer, because a demurrer admits the facts pleaded in a writ petition." (*Agricultural*, *supra*, 4 Cal.App.5th at p. 682.) In other words, "[i]n the absence of a true return, all well-pleaded and verified allegations of the writ petition are accepted as true." (*Bank of America*, *supra*, 212 Cal.App.4th at p. 1084.) Courts often apply this remedy. (See, e.g., *Dorsey v. Superior Court* (2015) 241 Cal.App.4th 583, 589; *Shaffer v. Superior Court* (1995) 33 Cal.App.4th 993, 996, fn. 2.) Alternatively, the court may deem that "the unverified return which is not a demurrer . . . be stricken in terms of the merits of the mandate petition." (*Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1287.)

In this case, we agree with petitioner's proposal (in reply to the unverified return) for the noncompliant response to be deemed a return by demurrer and for the "well-pleaded and verified allegations of the writ petition [to be] accepted as true." (*Bank of America*, *supra*, 212 Cal.App.4th at p. 1084.)

*B. Facts*

We accept the following, well-pleaded and verified allegations of the petition as true for purposes of our review. Some facts are also drawn from the motion pleadings and preliminary hearing transcript in the trial court, which petitioner has attached and incorporated by reference in the petition.

On November 7, 2021, at approximately 2:52 a.m., Feghhi was driving his vehicle at 129 miles per hour when he rear-ended the victim, Vanessa Arellano, killing her. California Highway Patrol Officer Nile Stewart was the lead investigating officer at the crash site. Officer Stewart observed Feghhi displaying objective signs of alcohol impairment, including an odor of alcohol,

4

red, watery eyes, and an unsteady gait. Feghhi told Officer Stewart that he had had two drinks. Officer Stewart conducted a field sobriety test and concluded from his investigation that Feghhi was impaired.

Feghhi refused a request by Officer Stewart to provide a breath sample for the preliminary alcohol screening device. Upon Feghhi's arrest at approximately 3:50 a.m., Officer Stewart told Feghhi that he was obligated to provide a breath or a blood sample, but Feghhi refused. Officer Stewart was assisted by Officer Fernando Marquez, who took Feghhi to the station for booking.

Officer Marquez applied for a search warrant to seize a sample of Feghhi's blood in a medically approved manner and submit it to a laboratory for analysis. The search warrant application was accompanied by Officer Marquez's signed affidavit. The affidavit stated that Marquez responded to the scene of the traffic crash with his partner, Officer Stewart. Stewart spoke with Feghhi, who was standing at the side of his vehicle. The affidavit described the objective signs and symptoms of alcohol intoxication that Stewart observed and stated that Stewart "advised the arrestee of [i]mplied [c]onsent per [Vehicle Code section 23612] verbatim," and that Marquez "read the arrestee the back of the DMV DS-367 form verbatim."[2] The affidavit further asserted, "Based on the foregoing, a sample of the blood of the arrestee constitutes evidence that tends to show a violation of [s]ection 23140, 23152, or 23153 of the Vehicle Code and the person from whom the

---

[2] Officer Stewart later clarified in testimony at the preliminary hearing that he advised Feghhi of the requirement that Feghhi submit to either a blood test or breath test, and Feghhi declined, at which point Stewart instructed Officer Marquez to take Feghhi to the station and obtain a warrant if necessary. Officer Stewart did not read Feghhi the complete advisement (form DS-367) but left that step to Officer Marquez.

sample is being sought has refused an officer's request to submit to, or has failed to complete, a blood test as required by [s]ection 23612 of the Vehicle Code."

Judge Le Jaqueline Duong signed the warrant. At approximately 6:15 a.m., a registered nurse and certified phlebotomist technician withdrew a sample of Feghhi's blood in a medically approved manner pursuant to the warrant. Laboratory testing revealed Feghhi's BAC to be 0.14 percent at the time the blood sample was taken (approximately three hours after the crash).

*C. Procedural History*

A magistrate held Feghhi to answer on the charges of murder, gross vehicular manslaughter, driving under the influence of alcohol and causing injury to another, and driving with a BAC of 0.08 percent or more and causing injury to another. The magistrate also found the evidence sufficient to support the allegations that Feghhi willfully refused a peace officer's request to submit to a chemical test and drove at excessive speed.

In March 2024, petitioner filed an information conforming to the magistrate's holding order and adding an allegation that Feghhi personally inflicted great bodily injury. The information charged Feghhi as follows: murder of Vanessa Arellano on or about November 7, 2021 (Pen. Code,[3] § 187, subd. (a); count 1), gross vehicular manslaughter (§ 191.5, subd. (a); count 2), driving under the influence of alcohol and causing injury to another (Veh. Code, § 23153, subd. (a); count 3), and driving with a BAC of 0.08 percent or more and causing injury to another (Veh. Code, § 23153, subd. (b); count 4). It further alleged, as to each count, that Feghhi personally inflicted great bodily injury within the meaning of sections 667, 1192.7, subdivision

---

[3] Unspecified statutory references are to the Penal Code.

6

(c)(8), 12022.7, subdivision (a), and 1203, subdivision (e)(3); that at the time of Feghhi's arrest for the charged offenses, as to counts 2, 3, and 4, he willfully refused and failed to complete a chemical test pursuant to Vehicle Code sections 23612 and 23157 (Veh. Code, § 23577, subd. (a)); and that he was driving a vehicle 30 miles and more per hour over the maximum speed limit on a freeway and in a manner prohibited by Vehicle Code section 23103 (Veh. Code, § 23582).

Feghhi filed a motion to quash and traverse the search warrant and to suppress evidence pursuant to section 1538.5, subdivision (i) (motion to traverse, or motion). In his motion, Feghhi argued that Officer Marquez "intentionally misled the magistrate into a mistaken belief that [] Feghhi had refused a chemical test so that police could obtain a blood sample, where none was necessary given that [] Feghhi had repeatedly asserted his legal right to choose a breath test." Feghhi asserted that the transcript of the body-worn camera footage of his arrest (attached as an exhibit to the motion) showed that he had "immediately and unambiguously requested a breath test" after being admonished that he had a right to choose a blood or breath test and had "explicitly asserted his right to submit a voluntary evidentiary breath test at least six times." Feghhi requested an evidentiary hearing pursuant to *Franks* to prove the deliberate falsity and reckless omission of statements in the search warrant affidavit. Feghhi also filed a section 995 motion to dismiss the information, arguing there was insufficient evidence to support the implied malice murder charge and for the information to be refiled "to charge the offense that was supported by the evidence."

Petitioner opposed both motions. In opposition to the motion to traverse, petitioner argued that Feghhi had not met his burden to justify a *Franks* hearing by making a substantial showing of any misrepresentation or

7

material omission in the warrant affidavit, and furthermore that even if the alleged misrepresentation and/or omission were corrected and included in the affidavit, the warrant would still be supported by probable cause.

Petitioner challenged Feghhi's characterization of the record and reliance on only the last several minutes of the audio recording transcribed from Officer Marquez's body-worn camera, which failed to include Feghhi's initial refusal to submit to a chemical test when requested following the admonition by Officer Stewart. Petitioner maintained that given Feghhi's initial refusal and failure to make a clear and unambiguous choice during his recorded interaction with Officer Marquez, Marquez lacked clear consent to a chemical test and reasonably described Feghhi's conduct as a refusal to submit to a chemical test. Moreover, petitioner argued that because the incident involved a potential felony DUI and vehicular manslaughter, Officer Marquez was authorized to seek a warrant for the blood draw.

Feghhi filed reply briefs in support of both the motion to traverse and motion to dismiss. As to the motion to traverse, Feghhi argued that while he initially declined a chemical test when asked by Officer Stewart, he told Officer Marquez repeatedly that he wished to perform a breath test because he was afraid of needles. Feghhi asserted that the affidavit's omission of his consent to a breath test was material to the probable cause inquiry because "there would be no need for the magistrate to authorize the invasive blood test if she knew [Feghhi] had consented to the breath test."

The trial court held a hearing on both motions.[4] As to the motion to traverse, the court relied on the preliminary hearing transcript and the

---

[4] Because the magistrate who issued the search warrant was not available to hear the motions, a different bench officer presided over the hearing on the motions to traverse and to dismiss.

parties' written motion and opposition papers. The court did not ask Officers Stewart and Marquez (who were present in court pursuant to subpoenas by the district attorney) to testify, nor did the court review the body-worn camera footage referenced in Feghhi's motion.

The trial court considered two issues raised by the motion: the effect of the implied consent law under Vehicle Code section 23612 and the characterization of a blood draw under United States Supreme Court precedent. The court distinguished the implied consent law, which was "largely an administrative statute" that provided "collateral consequences" affecting driving privileges, from the issue of "invasiveness of" the blood draw such that the magistrate would not have issued the warrant had she been informed the defendant had agreed to a breath test.

The trial court determined that Feghhi's assertion, following his initial rejection of the request for a chemical test, that he did not " 'like needles' " and would " 'take a breath test' " should have resolved the warrant issue. The court stated it did not believe that "[h]ad that been put in the affidavit, . . . [the magistrate] would have issued that warrant. She simply would have said, 'You have your alternative to a breath [*sic*] test. He says he will take it. Go get it done.' " The court reasoned that although the defendant "may have initially refused" consent, he later agreed to submit to a breath test, which "under the current law, [the defendant] has that option, he exercised it, and that should have ended it." The court granted the motion to traverse (order granting motion to traverse). It denied the motion to dismiss the murder count.

On March 3, 2025, petitioner filed the instant petition, seeking writ review of the order granting motion to traverse. Feghhi filed an opposition to the petition, arguing the trial court correctly suppressed the blood draw

9

evidence, having found the failure to disclose the defendant's consent to a breath test was material and given the invasiveness of the blood draw. On August 1, 2025, this court summarily denied the petition.

Petitioner sought review in the California Supreme Court. On October 1, 2025, our high court granted the petition for review and transferred the matter to this court with directions to vacate the original order denying mandate and issue an order to show cause. On October 3, 2025, this court vacated the order denying the petition and ordered respondent to show cause why petitioner is not entitled to the relief requested. As described *ante* (pt. I.A.), in response to this court's invitation to file a return in opposition to the writ, Feghhi filed an unverified legal brief, which we treat as a return by demurrer to the petition.

## II. DISCUSSION

The petition challenges the suppression order on legal and procedural grounds.[5] Petitioner contends the trial court applied an incorrect legal standard in granting the motion because it failed to assess the affidavit (modified to correct any omission or misrepresentation) for probable cause and treated a purported statutory violation of the implied consent law as a basis to deny a request for a search warrant supported by probable cause. Petitioner also asserts the court erred by granting Feghhi's motion without hearing any evidence.

Feghhi's return asserts, citing the transcript of the body-worn camera footage of his arrest and attached to the motion, that after Feghhi was read the admonition, he engaged in a colloquy with Officer Marquez wherein

---

[5] While the petition sets forth three bases for reversal of the trial court's order, we understand the first and third asserted bases—both of which challenge the order granting motion to traverse on legal grounds—to be duplicative. We address those arguments together.

Feghhi admitted he was " 'a little bit scared of needles' " and " 'want[ed] [to] do a breath[a]lizer test.' " Feghhi argues that by seeking and obtaining a search warrant for a blood draw after he repeatedly requested a breath test and by misrepresenting his purported refusal to submit to a chemical test, the officers violated both California's implied consent law and Feghhi's constitutional rights. Feghhi asserts that misrepresenting the need to obtain a physically intrusive blood draw when a breath test was available and of similar evidentiary value was unreasonable under the Fourth Amendment and rendered the results of the search inadmissible.

*A. Legal Principles and Standard of Review*

" 'In California, issues relating to the suppression of evidence derived from governmental searches and seizures are reviewed under federal constitutional standards.' " (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1212.)

The Fourth Amendment of the United States Constitution "provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause.' " (*Missouri v. McNeely* (2013) 569 U.S. 141, 148 (*McNeely*).) The Supreme Court has described the warrant clause as "[t]he bulwark of Fourth Amendment protection . . ., requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." (*Franks, supra*, 438 U.S. at p. 164.) The warrant clause applies to the blood draw in this case. (*McNeely*, at p. 148 [blood draw "involved a compelled physical intrusion beneath [defendant]'s skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation"].)

11

The Supreme Court in *Franks* recognized a defendant's right to challenge a search warrant "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." (*Franks*, *supra*, 438 U.S. at pp. 155–156.) *Franks* further held that if the defendant at the hearing shows reckless disregard by a preponderance of the evidence "and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." (*Id.* at p. 156.)

California courts likewise apply *Franks* to deliberate omissions of material facts from an affidavit for a search warrant. " 'A defendant can challenge a search warrant by showing that the affiant deliberately or recklessly omitted material facts that negate probable cause when added to the affidavit.' " (*People v. Sandoval* (2015) 62 Cal.4th 394, 409, quoting *People v. Eubanks* (2011) 53 Cal.4th 110, 136 (*Eubanks*).) Our high court has explained that, " '[t]hough similar for many purposes, omissions and misstatements analytically are distinct in important ways. . . . An affidavit need not disclose every imaginable fact however irrelevant. It need only furnish the magistrate with information, favorable and adverse, sufficient to permit a reasonable, common sense determination whether circumstances which justify a search are probably present. [Citations.]' [Citation.] '[A]n affiant's duty of disclosure extends only to "material" or "relevant" adverse facts.' [Citation.] '[F]acts are "material" and hence must be disclosed if their

omission would make the affidavit *substantially misleading*." (*Sandoval*, at p. 410.)

"Courts have a 'strong policy favoring search by warrant rather than upon other allowable basis.' " (*People v. Amador* (2000) 24 Cal.4th 387, 393.) "For this reason, when . . . the police do obtain a warrant, that warrant is presumed valid. 'Thus if the defendant attempts to quash a search warrant, . . . the burden rests on him [or her].' [Citation.] A defendant claiming that the warrant or supporting affidavit is inaccurate or incomplete bears the burden of alleging and then proving the errors or omissions." (*Ibid*.; see *Franks*, *supra*, 438 U.S. at pp. 171–172.)

" 'A defendant has a limited right to challenge the veracity of statements contained in an affidavit of probable cause made in support of the issuance of a search warrant. The trial court must conduct an evidentiary hearing only if a defendant makes a substantial showing that (1) the affidavit contains statements that are deliberately false or were made in reckless disregard of the truth, and (2) the affidavit's remaining contents, after the false statements are excised, are insufficient to support a finding of probable cause. Innocent or negligent misrepresentations will not support a motion to traverse. [Citations.] A defendant who challenges a search warrant based on omissions in the affidavit bears the burden of showing an intentional or reckless omission of material information that, when added to the affidavit, renders it insufficient to support a finding of probable cause. [Citations.] In either setting, the defendant must make his showing by a preponderance of the evidence, and the affidavit is presumed valid.' " (*People v. Miles* (2020) 9 Cal.5th 513, 576–577 (*Miles*); see *People v. Scott* (2011) 52 Cal.4th 452, 484 (*Scott*).)

13

"On appeal, '[w]e defer to the trial court's express and implied factual findings if supported by substantial evidence, but we independently determine the legality of the search under the Fourth Amendment.' " (*Miles*, *supra*, 9 Cal.5th at p. 577, quoting *Eubanks*, *supra*, 53 Cal.4th at p. 133.)

B. *The Trial Court Erroneously Granted Feghhi's Motion To Traverse the Search Warrant and Suppress the BAC Evidence*

In his motion, Feghhi asserted that Officer Marquez "intentionally misled the magistrate into a mistaken belief that [] Feghhi had refused a chemical test so that police could obtain a blood sample, where none was necessary given that [] Feghhi had repeatedly asserted his legal right to choose a breath test." The motion thus raised two issues: first, whether the affidavit supporting the warrant falsely represented Feghhi's nonconsent to a chemical test (or omitted the fact of Feghhi's consent), and second, whether Feghhi's purported consent rendered the blood draw (and thus, the warrant) not "necessary" because Feghhi had exercised his statutory right to choose a breath test.

Feghhi's motion must be viewed under the *Franks* two-part framework for analyzing a defendant's claim in a criminal proceeding that factual misstatements or omissions in the affidavit invalidate the probable cause determination. This framework required the trial court to decide whether Feghhi met his burden for an evidentiary hearing on the motion by (1) evaluating Feghhi's allegations of falsity or material omissions in the affidavit supporting the warrant, *and* (2) determining whether the affidavit's remaining contents, after removing or correcting the alleged falsities, were insufficient to support a finding of probable cause.

We have significant doubts whether the evidence presented at the hearing provided substantial evidence in support of the magistrate's implied

14

finding that Feghhi immediately consented to a breath test and that Officer Marquez's affidavit contained a material omission. But even assuming arguendo there was a material omission in the affidavit, we decide the trial court erred in determining the remainder was insufficient to support a finding of probable cause by the magistrate.

"[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." (*Franks*, *supra*, 438 U.S. at pp. 171–172.) In the context of an alleged omission, we consider whether the affidavit's contents—corrected to include the omitted information—were insufficient to support a probable cause finding. (*Miles*, *supra*, 9 Cal.5th at p. 576.) "Probable cause sufficient for issuance of a warrant requires a showing in the supporting affidavit that makes it substantially probable that there is specific property lawfully subject to seizure presently located in the particular place for which the warrant is sought." (*Scott*, *supra*, 52 Cal.4th at p. 483; see *Illinois v. Gates* (1983) 462 U.S. 213, 238 [reaffirming consideration of "all the circumstances set forth in the affidavit" in deciding whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place"].)

The trial court's determination that the magistrate would not have issued the warrant had the affidavit included the omitted information regarding Feghhi's request to submit a breath test after being admonished by Officer Marquez, reflected the court's reasoning that the warrant was not "necessary" and was unduly invasive because Feghhi had exercised his statutory right to choose a breath test.

15

The effect of Feghhi's delayed consent to a breath test under the implied consent law on the probable cause evaluation is a legal issue subject to our independent review. (*Miles*, *supra*, 9 Cal.5th at p. 577.)

In his motion, Feghhi asserted that Officer Marquez failed to comply with the implied consent law "in two separate ways" – by failing to honor Feghhi's " 'choice' " between a blood or breath test (Veh. Code, § 23612, subd. (a)(2)(A)) and by failing to ensure the arresting officer "shall have the test performed" when an arrestee requests a chemical test to determine BAC (*id.*, subd. (d)(1)). However, Feghhi did not articulate how these alleged statutory violations—and the omission of their occurrence from the warrant affidavit— precluded a finding of probable cause.

Feghhi instead focused on the distinction drawn by the United States Supreme Court between the "almost negligible" physical intrusion of a breath test (*Birchfield v. North Dakota* (2016) 579 U.S. 438, 461 (*Birchfield*)) and the "significantly more intrusive" blood test (*id.* at p. 464). He suggested that because the implied consent law recognizes that a breath (or urine) test is " 'functionally equivalent of a blood test for evidentiary purposes with respect to blood-alcohol level' " (quoting *People v. Fiscalini* (1991) 228 Cal.App.3d 1639, 1645 (*Fiscalini*)), "no warrant could or would reasonably have issued for the forcible taking of [] Feghhi's blood" had the magistrate been informed of Feghhi's consent to a breath test. Feghhi reiterates these arguments in his return.

Feghhi's arguments conflate several distinct issues.

The implied consent law provides that "[a] person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly committed in

16

violation of [s]ection 23140, 23152, or 23153." (Veh. Code, § 23612, subd. (a)(1)(A).)  In other words, "drivers who are arrested on suspicion of DUI are deemed to have consented to chemical testing to determine their blood-alcohol concentration." (*Espinoza v. Shiomoto* (2017) 10 Cal.App.5th 85, 97.) The law provides the arrestee "the choice of whether the test shall be of his or her blood or breath[,] and the officer shall advise the person that he or she has that choice." (Veh. Code, § 23612, subd. (a)(2)(A).)  The law further requires that if a person lawfully arrested for a suspected DUI offense requests a chemical test (blood or breath), "the arresting officer shall have the test performed." (*Id.*, subd. (d)(1).)  The law requires the officer to advise the motorist that a failure to submit to, or to complete, the required test will result in certain administrative and other penalties.  (*Id.*, subd. (a)(1)(D).)[6]

The implied consent law thus imposes requirements upon both driver and law enforcement officer in the context of a lawful DUI arrest.  It imposes administrative penalties, including suspension or revocation of a driver's license, for a motorist's refusal to submit to a chemical test.  Contrary to Feghhi's argument in support of the suppression motion, however, it does not constrain—and imposes no prerequisites upon—a law enforcement officer's decision to seek a search warrant for a blood test.  Nothing in the statutory

---

[6] Following the United States Supreme Court's decision in *Birchfield*, the Legislature in 2018 eliminated criminal penalties for the refusal to submit to a blood test. (*People v. Bolourchi*, (2024) 103 Cal.App.5th 243, 257, fn. 6, citing Assem. Bill No. 2717 (2017–2018 Reg. Sess.); Stats. 2018, ch. 177, §§ 1–3; see Veh. Code, § 23577, subd. (c).)  *Birchfield* reinforced prior Supreme Court opinions that "have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply" (*Birchfield*, *supra*, 579 U.S. at pp. 476–477) but held, given the invasiveness of a blood test, that motorists may not be *criminally* punished for refusing to submit to a blood test based on their implied consent (*id*. at p. 476).

17

language or case law interpreting the provisions of Vehicle Code section 23612 indicates that an officer's duties to advise the motorist of their implied consent to submit to a chemical test and of the consequences of failing to submit to or complete a test is a necessary predicate to obtaining a search warrant.

The body of law that Feghhi relies upon does not suggest otherwise. The United States Supreme Court precedents of *McNeely* and *Birchfield* examined specific exceptions to the prohibition on nonconsensual, warrantless blood draws in DUI investigations. (See *McNeely, supra*, 569 U.S. at p. 145 [rejecting natural metabolization of alcohol in the bloodstream as the basis for "a per se exigency" exception to the Fourth Amendment's warrant requirement in DUI cases and requiring exigency to "be determined case by case based on the totality of the circumstances"]; *Birchfield, supra*, 579 U.S. at p. 476 [concluding that a warrantless "breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving"]; *id.* at p. 477 [rejecting the imposition of criminal penalties as a basis for implied consent to a blood test].)

The United States Supreme Court's distinction between breath and blood tests based on the degree of physical intrusion as well as privacy interests (*Birchfield, supra*, 579 U.S. at pp. 461–464) in these cases must be understood in context of the issues being decided—namely, the constitutionality of *warrantless* searches conducted in connection with suspected drunk driving arrests. Feghhi relies on Supreme Court cases that address the constitutional limits of warrantless searches that do not speak to whether probable cause supported the warrant application in this case.

The United States Supreme Court's Fourth Amendment jurisprudence recognizes that "reasonableness is always the touchstone of Fourth

18

Amendment analysis." (*Birchfield, supra*, 579 U.S. at p. 477.)  In most criminal cases, "reasonable[ness]" is defined by "the procedures described by the Warrant Clause of the Fourth Amendment.  [Citations.]  Except in certain well-defined circumstances, a search or seizure in such a case is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." (*Skinner v. Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 619.)  Feghhi has cited no authority—and we are similarly unaware of any—holding that there is a categorical rule deeming blood tests unreasonable under the Fourth Amendment where the police have secured a warrant supported by probable cause, even if the defendant consents to a chemical test.[7]

Feghhi cites several California cases and a decision of the Ninth Circuit Court of Appeals as support for the proposition that an arrestee's consent to a breath test under the implied consent law renders a forced blood test *unreasonable* under the Fourth Amendment, given the functional equivalence of the breath and blood tests for evidentiary purposes.  (See *Nelson v. City of*

---

[7] We acknowledge that compliance with the procedures of the warrant clause does not invariably equate with reasonableness under the Fourth Amendment.  In *Winston v. Lee* (1985) 470 U.S. 753, for example, the United States Supreme Court held that a court order requiring a suspect to undergo surgery to remove a bullet—as probable evidence of a crime—from the suspect's chest violated the Fourth Amendment.  (*Id.* at p. 755.)  The court reasoned that under such circumstances, "[a] compelled surgical intrusion into an individual's body for evidence, . . . implicates expectations of privacy and security of such magnitude that the intrusion may be 'unreasonable' even if likely to produce evidence of a crime." (*Id.* at p. 759.)  However, *Winston* specifically contrasted the significant intrusion of surgery with routine blood draws, which "do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity." (*Id.* at p. 762.)  *Winston* does not support the broad attack urged by Feghhi here on the reasonableness of a probable-cause warrant for a blood draw.

19

*Irvine* (9th Cir. 1998) 143 F.3d 1196, 1205, 1207 (*Nelson*) [nonconsensual, warrantless blood tests violated Fourth Amendment rights of DUI defendants who had consented to undergo available breath or urine tests]; *Fiscalini, supra*, 228 Cal.App.3d at pp. 1644–1645 [reversing denial of motion to suppress where officers obtained warrantless blood sample after defendant's DUI arrest despite having already obtained a voluntary a urine test]; cf. *People v. Sugarman* (2002) 96 Cal.App.4th 210, 215–216 [affirming denial of defendant's motion to suppress blood test evidence where conditions were met for exigent circumstances exception to the warrant requirement and the record showed defendant was obstructing attempts to obtain a breath sample].)  Like the United States Supreme Court cases cited by Fegghi, these cases also involved warrantless searches.  Feghhi's attempt to compare the circumstances of his blood draw to those in *Nelson* and *Sugarman* is therefore unavailing.

Moreover, to the extent the cited authorities address the question of whether a violation of the implied consent law by law enforcement officers serves as a basis for application of the exclusionary rule to the evidence obtained, courts have squarely rejected such an approach.  (*Fiscalini, supra*, 228 Cal.App.3d at p. 1645, fn. 7 ["Mere noncompliance with the implied consent law . . . does not implicate any constitutional issue or invoke any statutory exclusionary rule."]; accord, *People v. Brannon* (1973) 32 Cal.App.3d 971, 975 ["Evidence obtained in violation of a statute is not inadmissible per se unless the statutory violation also has a constitutional dimension."]; see also *People v. Vannesse* (2018) 23 Cal.App.5th 440, 447 [holding that "failure to give an advisement in compliance with the implied consent law does not mandate the suppression of the test result" because "evidence may be suppressed . . . only if the defendant's Fourth Amendment rights were

20

violated and suppression is mandated by the federal exclusionary rule"]; *Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 118 ["California case law unequivocally establishes a police officer's failure to comply with the implied consent law does not amount to a violation of an arrestee's constitutional rights."].)

Nor has Feghhi advanced any argument regarding the effect of Officer Marquez's omission to the magistrate's probable cause determination. Feghhi does not dispute that the facts recited in Marquez's affidavit related to the traffic crash made "it substantially probable" (*Scott*, *supra*, 52 Cal.4th at p. 483) that evidence of a DUI offense would be found in a blood test to obtain Feghhi's BAC. Facts supporting the probable cause finding included evidence obtained at the scene that Feghhi was the driver of the Corvette that crashed into Arellano's vehicle, that Officer Stewart conducted a DUI investigation of Feghhi and observed objective signs and symptoms of alcohol intoxication, and that Arellano sustained fatal injuries.

For purposes of a *Franks* hearing to quash and traverse the warrant, it was Feghhi's burden to show that correcting the affidavit's contents to include the omitted information rendered the affidavit insufficient to support a probable cause finding. (*Miles*, *supra*, 9 Cal.5th at p. 576.) Feghhi's motion did not engage in the requisite analytical exercise. Nor does he propose, in response to the petition and order to show cause, how informing the magistrate of his request to take a breath test in lieu of a blood test would have adversely impacted the affidavit's showing of probable cause for issuance of the warrant for a blood draw.

Feghhi appears to concede as much in his return. He states that petitioner "argued in the writ that *Franks* applies only on the issue of false statements or omissions related to the probable cause requirement, *which*

21

*was not the situation here.*" (Italics added.) Feghhi contends that "even if petitioner was correct about the *Franks* issue," there remains a viable argument, which has not been considered, "that the search was nevertheless unreasonable under the Fourth Amendment as determined in *Nelson* where the state insisted in obtaining a blood test despite the suspect's demonstrated consent to undergo a breath test." Feghhi reiterates his earlier argument that because the breath test was available and of similar evidentiary value, the state's insistence on obtaining a blood test, requiring "significant physical intrusion . . . rendered the search unreasonable, and the results inadmissible."

We disagree. Feghhi's argument ignores the contextual distinction—procurement of a warrant versus a warrantless search—between this case and *Nelson*. Because *Nelson* preceded the United States Supreme Court's decisions in *McNeely* and *Birchfield*, the controlling authority was *Schmerber v. California* (1966) 384 U.S. 757, in which the high court established an exigency exception to the warrant requirement for blood alcohol testing in DUI cases. (*Id*. at pp. 770–771.) Exigency was a crucial component of the Court of Appeals' reasoning in *Nelson*: "Whenever a DUI arrestee consents to a breath or urine test, and such tests are available, the administration of either the breath or urine test would preserve the evidence *and end the exigency*." (*Nelson, supra*, 143 F.3d at p. 1205, italics added.) The court concluded, "because the sole justification advanced to excuse the officers from obtaining a warrant disappeared when the exigency ended, the blood tests were not only unnecessary and unreasonable, but violated the Fourth Amendment's warrant requirement." (*Ibid*.)

Here, exigency was irrelevant because the constitutionality of the blood test search does not rely on any exception to the warrant requirement. Apart

from a single, conclusory argument that "any policy by a law enforcement agency to take a blood test regardless of the suspect's insistence on a breath test is . . . unreasonable under the Fourth Amendment," Feghhi fails to provide any argument or authority for this categorical rule.[8] We decline to adopt this significant departure from the general rule that a search conducted pursuant to a warrant supported by probable cause issued by a neutral and detached magistrate is "reasonable" under the Amendment's terms.

On this record, we conclude Feghhi has not met his burden to show that the fact of his consent to a breath test was material to the magistrate's evaluation of probable cause under the warrant. Feghhi also has not shown, on the specific facts of this case, that the issuance of a warrant for his blood sample was unreasonable. In other words, Feghhi did not meet his burden for a *Franks* hearing or the granting of his suppression motion.

The trial court's contrary conclusion was error.[9]

## III. DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its January 31, 2025 order in case No. F2200028 granting real party in interest's motion to traverse and quash search warrant and suppress evidence, and enter a new order denying said motion.

---

[8] We do not suggest that use of a warrant for a blood draw rather than a chemical breath test may *never* be unreasonable. That abstract question is not before us. On these facts, involving a routine blood draw clearly supported by probable cause, we decide that no violation of Feghhi's Fourth Amendment rights occurred.

[9] Having decided that Feghhi's motion to traverse the search warrant and suppress the evidence of the blood draw should have been denied, we need not reach petitioner's additional argument that the trial court erred by granting the motion to traverse without hearing any evidence.

_____

Danner, J.

WE CONCUR:


_____

Greenwood, P. J.


_____

Bromberg, J.


**H053051**
*People v. Superior Court (Feghhi)*

Trial Court:  County of Santa Clara

Trial Judge:  Hon. Robert Foley

Counsel:          Jeffrey F. Rosen, District Attorney and Thomas Butterfoss, Deputy District Attorney for Petitioner.

No appearance for Respondent.

G. Cole Casey and Patrick Morgan Ford for Real Party in Interest.

H053051
*People v. Superior Court (Feghhi)*